## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

Federal Deposit Insurance
Corporation as Receiver for Brickwell
Community Bank,

|                                              |                                     |
| -------------------------------------------- | ----------------------------------- |
|                                Plaintiff,    | Civ. No. 12-1218 (RHK/JSM)          |
|                                              | **MEMORANDUM OPINION**              |
|                                              | **AND ORDER**                       |
| v.                                           |                                     |

John M. Prill and Commercial Appraisal
& Consulting Group, LLC d/b/a
Commercial Appraisal & Consulting Group,

                                Defendant.

---

Michael R. Carey, C.J. Schoenwetter, Patrick L. Arneson, Richard G. Morgan, Bowman
& Brooke LLP, Minneapolis, Minnesota, for Plaintiff.

Timothy W. Waldeck, Lindsey J. Woodrow, Waldeck Law Firm P.A., Minneapolis,
Minnesota, for Defendants.

---

## INTRODUCTION

This dispute arises out of an allegedly negligent appraisal of a commercial

property located at 225 North Main Street, Stillwater, Minnesota ("the 225 Property").

Defendant John M. Prill and his company Defendant Commercial Appraisal &

Consulting Group ("CACG") performed the appraisal for Brickwell Community Bank

("Brickwell") as part of Brickwell's evaluation of collateral for a potential loan.  Plaintiff

Federal Deposit Insurance Corporation ("FDIC"), acting as receiver for Brickwell, which

closed in 2009, commenced this action against Defendants on Brickwell's behalf.  The

parties now move for summary judgment; for the reasons set forth below, the FDIC's

Motion will be denied and Defendants' Motion will be granted in part and denied in part.

## BACKGROUND

The following facts are recited in the light most favorable to Plaintiff,[1] except

where otherwise stated.

In early 2007, Mainstream Development Partners, LLC ("Mainstream")

approached Brickwell about a $1.1 million, one-year line of credit ("the Loan") to fund a

development project in downtown Stillwater.  Mainstream intended to raze the building

currently on the 225 Property and construct a new development.  As the primary

collateral for the Loan, Mainstream pledged a second mortgage on the 225 Property,

which was already subject to a $1.5 million mortgage held by Northstar Bank.  Brickwell

hired Prill to appraise the 225 Property.

Prill was given information about the proposed building and land by Mainstream.

He alleges Mainstream told him that a nearby, non-adjacent 51,360 square-foot parking

lot ("the City Lot"), which was not part of the pledged collateral, was being donated by

the City of Stillwater and should be included in the appraisal as land for the project.  Prill

valued the 225 Property and City Lot together at $4.1 million.  Brickwell, however, had

not intended the City Lot to be included in the appraised property and did not realize—

until much too late—that it was.  The FDIC contends the 225 Property *alone* was worth

only $1.1 million, not $4.1 million as Brickwell believed.

---

[1] Although *both* parties are moving for summary judgment, the FDIC's Motion hinges on a legal
determination and does not implicate issues of fact.

In the transmittal letter sent to Brickwell with the appraisal, Prill summarized his

appraisal report as follows:

> In accordance with your request, we have completed an appraisal of the above referenced property [Maple Island Creamery Development Land, 225 North Main Street, Stillwater] for the purpose of estimating the current market value of the property's fee simple interest. We have made an inspection of the subject property, as well as the land, market sale, and rental comparison properties.
>
> The following describes our application of standard appraisal methods, contains data gathered in our investigation, and demonstrates our analysis in estimating the market value of the subject property. Care has been exercised in verifying the factual data presented in this report, and it is assumed to be reliable. This appraisal is made subject to certain assumptions and limiting conditions contained herein.
>
> It is our opinion that the value of the subject property "*As Is*" as of January 15, 2007, the effective date of the appraisal, based on an exposure time of one year, is:
>
> **FOUR MILLION ONE HUNDRED THOUSAND DOLLARS**
> **$4,100,000**
>
> We have no personal interest with respect to the subject matter of this appraisal report or the parties involved.
>
> This appraisal has been made in conformity with the requirements of the *Uniform Standards of Professional Appraisal Practice* ["USPAP"] and the *Financial Institutions Reform, Recovery and Enforcement Act*.
>
> * * *

(Woodrow Aff. Ex. F.)  The first page of the report provides the following:

### SUMMARY OF SALIENT FACTS AND CONCLUSIONS

| | |
|---|---|
| <u>*Appraised Property*</u> | ***Maple Island Creamery Development Land*** |
| *Address/Location:* | 225 North Main Street, Stillwater, Minnesota |
| *Owner:* | Mainstream Development Partnership |
| *Purpose/Use of Appraisal:* | Documentation for Financing |
| *Highest and Best Use:* | Commercial |
| <u>*Description*</u> | |
| *Site Size:* | 68,815 Square Feet–.58 Acres |
| *Gross Building Area:* | 4,480 Square Feet |
| *Age of Improvements/Year Built:* | 68 Years/1939 |
| <u>*Legal Information*</u> | |
| *Property Identification Number:* | 28-03020-14-0069; 0070 |

* * *

- 3 -

***Appraiser's Estimate***
***of Market Value:***
*Land Value:*                          $4,100,000
                                       \* \* \*

(Id., Appraisal at 1.)

The FDIC contends these documents were misleading because they indicate the

225 Property alone is worth $4.1 million and do not mention the City Lot.  The FDIC

contends Prill's description of the appraisal as estimating a "fee simple interest" "as-is" is

inaccurate.  It also notes that the address and the property identification numbers

provided do not identify or encompass the City Lot.  The only indication in the

transmittal letter or summary page that the City Lot was included in the appraisal is the

"site size" listed, which includes the City Lot in the total square-footage, but not the total

acreage.  In addition, the section of the report entitled, "Identification of Property To Be

Valued," contains the address, property identification number, and legal description for

the 225 Property only, not the City Lot.

The FDIC alleges Defendants' report violated the Uniform Standards of

Professional Appraisal Practice ("USPAP") and Minnesota law.  For example, the

USPAP requires that the appraiser provide sufficient information from which to identify

the property involved in the appraisal.  The FDIC contends Prill's report violated this and

other standards and the appraisal expert testified to the same.  (See Gergen Dep. at 54–60

(identifying several USPAP violations and opining Prill was negligent in preparing the

appraisal).)  Prill himself acknowledges his transmittal letter could have been misleading.

(Prill Dep. at 158, 252 (acknowledging he did not provide the location of the City Lot or its legal description in his report and the letter could be interpreted as misleading).)

Although the transmittal letter and summary do not reference the City Lot, it is mentioned at various points throughout the rest of the appraisal report.  For example, the "History" section of the report provides, "The subject property now consists of the parking lot on Parcel 1, the Maple Island Hardware store building (including the Wrap and Ship store) on Parcel 2, *and a 51,360 square foot improved parking area donated by the city*." [2]  (Woodrow Aff. Ex. F, Appraisal at 12 (emphasis added).)

Prill provided Brickwell with the appraisal in January 2007.  None of Brickwell's officers or employees who handled the Mainstream loan recalls reading the appraisal report apart from the first few pages, and none understood that the City Lot was part of the property appraised.  Brickwell's Chief Credit Officer, Leanne Gravning, completed a "Loan Presentation" that was given to its senior loan committee on March 18, 2007.  The Loan Presentation notes the value of the 225 Property as $4.1 million with $2.5 million in equity after discounting the Northstar mortgage.  (Woodrow Aff. Ex. C.)  Based on this value, Gravning calculated the loan-to-value ratio at 63%, considerably lower than Brickwell's ratio limit of 75%.  The Loan Presentation presented this as one of the Loan's two strengths:  "Solid loan to value at 63%."  (Id.)  And it was identified as a mitigating factor for two of the three weaknesses listed in the Presentation.  (Id.)  All four bank representatives who were signatories to the Loan Presentation testified that they relied on

---

[2] Contrary to this statement and Prill's understanding, Stillwater had not donated the City Lot to Mainstream.

the appraisal in approving the Loan and at least one testified that the loan would not have been approved had he known the 225 Property's real value.  (Swanstrom Dep. at 108; Gravning Dep. at 132; Pariseau Dep. at 175; Peterson Dep. at 109–10.)

In addition to having the 225 Property as collateral, Brickwell also had personal guarantees from Mainstream's owners, the Stefans, and a "Negative Pledge Agreement" in which Mainstream pledged to use the proceeds from the impending sale of another $2 million property to pay off the balance of the Loan.  Defendants assert the personal guarantees and Negative Pledge Agreement demonstrate that Brickwell did not believe the 225 Property was sufficient collateral and therefore did not rely on their appraisal in approving the loan.  They also dispute whether Brickwell could have reasonably relied on the appraisal when there is no evidence that any of its employees reviewed the appraisal, despite Brickwell's own Credit Policy requiring at least two employees to review the appraisal and one to complete an "Appraisal Review Checklist."  However, the FDIC's banking-industry expert opined that Brickwell likely would not have caught the error even if an employee *had* completed the Appraisal Review Checklist.  (Carey Decl. Ex. S. at 3.)  Likewise, Defendants' appraisal expert believed only someone with training or expertise in appraisals would have caught Prill's error.  (Gergen Dep. at 62.)  Defendants allege several other deficiencies in Brickwell's underwriting and assert that these were the cause of Brickwell's loss, not the appraisal.

Brickwell ultimately approved the Loan in March 2007 and issued Mainstream $1.1 million in credit.  In 2008, Mainstream sold the other property subject to its Negative Pledge Agreement.  Brickwell discovered, however, that Mainstream did not

own that property free and clear, but had mortgaged it before executing the Loan.  As a result, the proceeds from the sale were only $235,000.  Soon after, Mainstream defaulted on its first mortgage on the 225 Property and Northwest Bank foreclosed, and it then defaulted on Brickwell's Loan.  Brickwell obtained a judgment against Mainstream and the Stefans for the amount outstanding on the Loan (approximately $1,021,000), which remains uncollected.

In September 2009, the Minnesota Department of Commerce closed Brickwell and the FDIC was appointed as receiver.  The FDIC assigned Brickwell's judgment on the Loan to CorTrust, which purchased Brickwell.  In May 2012, the FDIC commenced the instant action against Defendants asserting negligent misrepresentation and "negligence/professional malpractice."  In response, Defendants asserted affirmative defenses of "malfeasance," "acts and omissions," "fault," and "contributory negligence."  The parties now move for summary judgment—Defendants move on the FDIC's claims and the FDIC moves on Defendants' affirmative defenses.

## STANDARD OF DECISION

Summary judgment is proper if, drawing all reasonable inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a); Ricci v. DeStefano, 557 U.S. 557, 586 (2009).  The moving party bears the burden of showing that the material facts in the case are undisputed.  Torgerson v. City of Rochester, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc).  The Court must view the evidence, and the inferences that may be reasonably drawn from it, in the light most favorable to the nonmoving party.  Beard

- 7 -

v. Banks, 548 U.S. 521, 529–30 (2006); Weitz Co. v. Lloyd's of London, 574 F.3d 885, 892 (8th Cir. 2009). The nonmoving party may not rest on mere allegations or denials, but must show through the presentation of admissible evidence that specific facts exist creating a genuine issue of material fact for trial. Fed. R. Civ. P. 56(c)(1)(A); Wood v. SatCom Mktg., LLC, 705 F.3d 823, 828 (8th Cir. 2013).

Where, as here, the Court confronts cross-motions for summary judgment, this approach is only slightly modified. When considering the FDIC's Motion, the Court views the record in the light most favorable to Defendants, and when considering the Defendants' Motion, the Court views the record in the light most favorable to the FDIC. "Either way, summary judgment is proper if the record demonstrates that there is no genuine issue as to any material fact." Seaworth v. Messerli, Civ. No. 09-3437, 2010 WL 3613821, at *3 (D. Minn. Sept. 7, 2010) (Kyle, J.), aff'd, 414 F. App'x 882 (8th Cir. 2011) (per curiam).

## ANALYSIS

### I.   CACG's Successor Liability

Before delving into the merits of the parties' claims and defenses, the Court will address Defendants' Motion to dismiss CACG as an improper Defendant in this action.

At the time of Brickwell's appraisal in 2007, CACG was a sole proprietorship owned by Prill. Sometime thereafter, two of Prill's employees purchased the business from him and converted it into a limited liability company, while continuing to do business under the same name. Prill testified that he no longer owns CACG and is not a principal, but he continues to perform appraisals for the company. Defendants assert that

the current limited liability company, which the FDIC named as a Defendant, cannot be held liable for Prill's or the former CACG's negligent actions.

Under Minnesota law, a transferee of a business's assets is generally not liable for the transferor's debts, obligations, and liabilities, except "to the extent provided in the contract or agreement between the transferee and the transferor," Minn. Stat. § 302A.661, subd. 4, or if the transfer was fraudulent, Schwartz v. Virtucom, Inc., No. A08-1059, 2009 WL 1311816, at *2 n.2 (Minn. Ct. App. May 12, 2009), or lacked sufficient consideration, Huray v. Fournier NC Programming, Inc., No. C9-02-1852, 2003 WL 21151772, at *5–6 (Minn. Ct. App. May 20, 2003).  The FDIC has not produced the purchase agreement or any other agreement indicating CACG assented to successor liability, nor has it produced evidence indicating the transfer was fraudulent or lacked consideration.  Accordingly, CACG will be dismissed from the action.

## II.      Negligence/Professional Malpractice

The FDIC alleges Prill negligently prepared his appraisal report, causing Brickwell to enter into the Loan with insufficient collateral and ultimately lose more than $1 million when Mainstream defaulted.  To succeed on its claim, the FDIC must prove Prill owed Brickwell a duty, Prill breached that duty by failing to use reasonable care in the preparation of his appraisal, and that Brickwell suffered some damage as a result of the breach.  Vernon J. Rockler & Co. v. Glickman, Isenberg, Lurie & Co., 273 N.W.2d 647, 650 (Minn. 1978).  The FDIC has presented expert testimony regarding the professional standard of care and how Prill violated it; Prill does not challenge this.

Instead, he contends only that his allegedly negligent report did not cause Brickwell's loss.

To establish causation, a plaintiff must prove the defendant's negligence was a "substantial factor" in bringing about plaintiff's injury and that some injury (although not necessarily plaintiff's particular injury) was a reasonably foreseeable result. Lubbers v. Anderson, 539 N.W.2d 398, 401 (Minn. 1995). The FDIC has submitted testimony of several Brickwell officers that they approved the Loan based, in part, on Prill's appraisal, which they understood to value the 225 Property at $4.1 million. That figure, represented by the 63% loan-to-value ratio, was presented as one of the Loan's three primary strengths. The FDIC has also offered testimony that Brickwell would not have made the Loan without securing additional collateral had the officers known the 225 Property's true value (or more precisely, had they known the $4.1 million appraisal value included the City Lot). Using a $1.1 million value for the 225 Property, the loan-to-value ratio would have been 225% instead of 63%, grossly exceeding the bank's maximum of 75%. Based on this evidence, a jury could reasonably conclude the allegedly negligent appraisal was a substantial factor in bringing about Brickwell's loss by causing it to issue a loan with insufficient collateral.

Prill contends poor underwriting and Mainstream's default caused Brickwell's loss, not the appraisal. But the FDIC is not required to show the appraisal was the *only* factor in bringing about Brickwell's loss, merely a substantial one; this determination and the corresponding apportionment of fault must be left to a jury. See id. at 402 (proximate cause is best left to a jury unless "reasonable minds can arrive at only one conclusion").

### III.    Negligent Misrepresentation

The FDIC also asserts a claim for negligent misrepresentation, alleging Prill misrepresented the value of the 225 Property and Brickwell relied on this to its detriment by approving the Loan.  "[A] person makes a negligent misrepresentation when (1) in the course of his or her business, profession, or employment, or in a transaction in which he or she has a pecuniary interest, (2) the person supplies false information for the guidance of others in their business transactions, (3) another justifiably relies on the information, and (4) the person making the representation has failed to exercise reasonable care in obtaining or communicating the information."  Valspar Refinish, Inc. v. Gaylord's, Inc., 764 N.W.2d 359, 369 (Minn. 2009).  Prill challenges whether he supplied false information and whether Brickwell justifiably relied on it.

*i. False Information*

"A person makes a misrepresentation when [he] make[s] an affirmative false statement or omit[s] certain facts that render the facts that are disclosed misleading."  Nance v. Evje, No. A06-1730, 2007 WL 2472449, at *3 (Minn. Ct. App. Sept. 4, 2007) (quotation omitted).  The FDIC contends Prill falsely represented the 225 Property alone was worth $4.1 million by failing to explain that the City Lot was part of the property appraised.  He maintains the appraisal was accurate and accurately communicated to Brickwell.

Prill contends his appraisal value was correct, as the appraised property included the 225 Property and the City Lot.  He contends Brickwell's loss did not result from an inaccurate valuation, but rather "from the fact that the borrowers did not own part of the

property appraised" and he was not responsible for verifying ownership, Brickwell was. But this argument ignores the FDIC's claim, which is not that Prill miscalculated the value of the combined 225 Property and City Lot or that he misrepresented the ownership of the City Lot, but rather that he did not properly explain which property had been appraised, leaving Brickwell with a false impression that the 225 Property alone was worth $4.1 million.

Furthermore, that Prill identified the City Lot as part of the appraised property a handful of times throughout the report does not foreclose the FDIC's claim that the report, taken as a whole, was misleading.  In the transmittal letter, the "Summary of Salient Facts," and the "Identification of Property To Be Valued," Prill identified the appraised property as only "225 North Main Street," with no mention of the City Lot. The City Lot's address—which is on *Water Street*—is never provided in the report, nor is its legal description or property identification number.  The report also identifies the owner of the appraised property as Mainstream and Mainstream did not own the City Lot. These descriptions are potentially misleading, which even Prill acknowledges.  (Prill Dep. at 252 (referring to a statement from his cover letter:  "I guess you could interpret it to be misleading").)  The Court concludes, therefore, that the FDIC has created a genuine issue of fact as to whether the report transmitted "false" information.

### ii.  Justifiable Reliance

Prill argues there can be no justifiable reliance on an appraisal that the plaintiff has not read and cites several cases supporting this proposition.  See Williams v. United Cmty. Bank, 724 S.E.2d 543, 549 (N.C. Ct. App. 2012); Scott v. LTS Builders LLC, No.

1:10-CV-0581, 2012 WL 5207456, at *5 (M.D. Pa. Oct. 22, 2012); Copper Sands

Homeowners Assoc., Inc. v. Copper Sands Realty, LLC, No. 2:10-cv-00510, 2012 WL

987996, at *17 (D. Nev. Mar. 20, 2012).   However, these cases are easily distinguished.

In each, the plaintiff was unaware of the appraisal's conclusions (or even its existence) at

the time of the relevant transaction.   Here, Brickwell commissioned the appraisal and its

loan officers not only knew of the appraisal at the time of its loan decision, but had read

enough of it to know the salient facts and conclusions, including the address of the

property appraised, the property interest appraised, and the appraiser's conclusion as to

the property's value, all of which were contained in the transmittal letter and appraisal

summary.   Brickwell's officers testified that they relied on the appraisal in approving the

Loan and the Loan Presentation supports this, as it emphasized the solid loan-to-value

ratio (calculated using the $4.1 million figure) as one of the Loan's primary strengths.

Contrary to Prill's contention, Brickwell's failure to follow its internal Credit Policy and

complete an Appraisal Review Checklist does not render its alleged reliance

unreasonable as a matter of law; that is for a jury to decide.   See Hoyt Props. v. PRG, 736

N.W.2d 313, 321 (Minn. 2007) (a plaintiff's reasonable reliance is "ordinarily a fact

question for the jury").

Prill also asserts that the Loan's other collateral—the Negative Pledge Agreement

and the personal guarantees—belies any assertion of reliance.   But this argument is

unavailing because a plaintiff need not establish the misrepresentation was "the sole

cause" of the plaintiff's actions; rather the misrepresentation must have "constituted *one*

*of several* inducements and had a material influence upon the plaintiff." <u>Berryman v.</u>

<u>Riegert</u>, 175 N.W.2d 438, 443 (Minn. 1970) (quotation omitted) (emphasis added).

## IV.    Defendants' Affirmative Defenses

The FDIC moves for summary judgment on Defendants' affirmative defense of

contributory negligence,[3] asserting any negligence on Brickwell's part cannot be imputed

to the FDIC and therefore cannot bar the FDIC's recovery.  This issue of imputation is

premature, however, because a jury may consider the comparative negligence of

Brickwell and Defendants at trial regardless and the issue need only be decided if the jury

returns a verdict assessing a portion of fault to Brickwell.  <u>See</u> Minn. Stat. §§ 604.01–.02

(contributory negligence statutes).  As the Minnesota Supreme Court has not addressed

the murky issue of whether imputation to the FDIC is appropriate for claims such as

these, the Court will reserve judgment on this defense if and when such need arises.

Accordingly, the FDIC's Motion will be denied without prejudice.

## CONCLUSION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS**

**ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. No. 25) is **DENIED**

**WITHOUT PREJUDICE** and Defendants' Motion for Summary Judgment (Doc. No.

20) is **GRANTED IN PART** and **DENIED IN PART**.  Defendants' Motion is

**GRANTED** as to the FDIC's claims against Commercial Appraisal & Consulting Group,

---

[3] The FDIC moves for summary judgment on Defendants' affirmative defenses, which were pleaded as "malfeasance," "acts and omissions," "fault," and "contributory negligence."  As neither party has explained or addressed any of these save contributory negligence, the Court will restrict its analysis accordingly.

LLC and that Defendant is dismissed from the action; in all other respects, the Motion is

**DENIED**.


Dated:  February 14, 2014                             s/Richard H. Kyle
                                                     RICHARD H. KYLE
                                                     United States District Judge